UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                           :

ROBERT TARDIO,                               :

                            Plaintiff,         :

                            - against -           :

BOSTON SCIENTIFIC CORPORATION,   :

                           Defendant.   :

------------------------------------------------------------X

16-CV-6740 (VSB)

**MEMORANDUM & OPINION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/27/2017

Appearances:

H.P. Sean Dweck
The Dweck Law Firm, LLP
New York, New York
*Counsel for Plaintiff*

Michael M. Krauss
Charles F. Knapp
Terran C. Chambers
Faegre Baker Daniels LLP
Minneapolis, Minnesota
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Robert Tardio brings this action against his former employer, Boston Scientific Corporation ("BSI" or "Defendant"), for breach of contract with respect to a release agreement signed by Plaintiff that stated that his personal severance benefit and employment agreement calculations were $182,120.27 (the "Release Agreement"), and violation of Defendant's severance plan (the "Severance Plan") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. Before me is Defendant's motion to dismiss the amended complaint for, among other reasons, improper venue based on the existence of a forum selection

1

clause in Plaintiff's employment agreement (the "Employment Agreement").  (Doc. 19.)
Because the forum selection clause was clearly communicated to Plaintiff, is mandatory, and
covers Plaintiff's claims—rendering the clause presumptively enforceable—and because
Plaintiff has failed to rebut the presumption of enforceability, Defendant's motion to dismiss for
improper venue is granted and this case is dismissed without prejudice to Plaintiff refiling his
claims in Minnesota.

I. **Background**[1]

Plaintiff began working as a Field Clinical Representative with BSI in July 2003.  (Am.
Compl. ¶ 6.)[2]  On April 4, 2016, Defendant advised Plaintiff that his position was being
eliminated as a result of workforce reduction, and on May 9, 2016, Defendant offered Plaintiff a
payment of $182,120.27 in exchange for Plaintiff's agreement to sign the Release Agreement,
which released all claims arising out of his employment.  (*Id*. ¶¶ 10–11.)  The payment was
offered in accordance with the ERISA-governed Severance Plan, which was authored and
adopted by Defendant.  (*Id*. ¶ 12.)  Plaintiff accepted Defendant's offer, and signed and returned
the Release Agreement to Defendant, on May 11, 2016.  (*Id*. ¶ 13.)  The Release Agreement
provided for the payment to Plaintiff of $182,120.27 "on the Company's regular pay date
occurring closest to time 30 days after the expiration of [Plaintiff's] rescission period, provided
[Plaintiff had] not exercised [his] right to rescind the Release Agreement."  (*Id*. ¶ 14.)  Defendant
then claimed that Plaintiff damaged sample products in his custody, thereby violating a code of
conduct and rendering him ineligible to receive the payment of $182,120.27 originally offered.
(*Id.* ¶ 16.)  Defendant thus revised the offer to $110,000, contingent on other terms and

---

[1] The following facts are taken from the amended complaint (the "Amended Complaint").  My reference to the factual allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to the Amended Complaint and Jury Demand filed on September 15, 2016.  (Doc. 6.)

conditions. (*Id.*)

Plaintiff disputes that he damaged any products, and claims that he performed his obligations under the Release Agreement and is otherwise eligible to receive the payment in accordance with the Severance Plan, (*id.* ¶ 18), but that by refusing to pay Plaintiff $182,120.27, Defendant has failed to perform its obligations pursuant to the Release Agreement, (*id.* ¶ 19.)

## II. Procedural History

Plaintiff filed the Amended Complaint on September 15, 2016. (Doc. 6.) Defendant filed a pre-motion letter on September 29, (Doc. 12), Plaintiff responded on October 4, (Doc. 15), and a pre-motion conference was held on December 1, (Dkt. Entry Dec. 1, 2016). Defendant filed its motion to dismiss, (Doc. 19), memorandum of law, (Doc. 20), and affidavit with exhibits in support of the motion, (Doc. 21), on December 28, 2016. Plaintiff filed his memorandum of law, (Doc. 23), and declaration with exhibits, (Doc. 22), in opposition on January 19, 2017, and Defendant filed its reply on February 13, 2017, (Doc. 24).

## III. Applicable Law

A strong public policy favors enforcement of forum selection clauses. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9–10 (1972). The Second Circuit has outlined a four-part test with respect to whether an action should be dismissed based on a forum selection clause. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). First, courts ask "whether the clause was reasonably communicated to the party resisting enforcement." *Id.* Second, courts determine whether the forum selection clause is mandatory or permissive, i.e., "whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." *Id.* (emphasis in original). Third, courts ask "whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.* If the clause is mandatory and the other parts of

the test can be answered in the affirmative, the clause is "presumptively enforceable." *Id.* If the clause if found to be presumptively enforceable, "[t]he fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383–84 (quoting *M/S Bremen*, 407 U.S. at 15); *see also Phillips*, 494 F.3d at 393 ("[O]bvious concomitants of litigation abroad" and litigation being "more costly or difficult" insufficient to rebut presumption of enforceability of forum selection clause).

## IV. Discussion

Plaintiff does not dispute that the first two parts of this test have been met. (*See* Pl.'s Opp. 4.)[3] Plaintiff asserts that the "claims at issue arise out of a layoff and the refusal of Defendant to pay severance," the right to which was "initially governed by the Defendant's Severance Plan, and thereafter the signed [Release Agreement], and NOT the Employment Agreement," and that therefore, the claims at issue are not subject to the forum selection clause. (*Id.*) Plaintiff further contends that enforcement of the forum selection clause would be "unfair, unreasonable, and unjust" because there is no nexus to Minnesota; rather, the facts of the case are inextricably tied to New York. (*Id.* at 5–6.) Plaintiff's contentions are not supported by the forum selection clause and the underlying allegations in the Amended Complaint.

First, I find that the forum selection clause clearly applies to the claims and parties involved in this action.[4] The forum selection clause here is broadly written, and states that

---

[3] "Pl.'s Opp. refers to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss. (Doc. 23.)

[4] Plaintiff does not appear to dispute that the forum selection clause applies to the parties at issue in this litigation, as both parties were signatories to the Employment Agreement. The parties also do not appear to rely in any way on Minnesota law, the law dictated by the choice of law provision contained in the same Employment Agreement, as well as in the Release Agreement. As a result, I assume from the parties' briefing that "they do not rely on any distinctive features of [Minnesota] law." *Phillips*, 494 F.3d at 386.

4

> Any disputes or claims between the parties or Employee and Boston Scientific agents or employees relating directly or indirectly to this Agreement, or arising hereunder, or relating directly or indirectly to Employee's employment with Boston Scientific shall be governed by the laws of the state of Minnesota regardless of the conflicts of laws rules of Minnesota or any other state. Employee consents to the exclusive jurisdiction of the state and federal courts of Minnesota for the resolution of any such disputes or claims and specifically waives any objection to such disputes or claims being brought and resolved exclusively in those courts. Employee agrees that Employee will not commence litigation against Boston Scientific or its agents and employees for such disputes in any court outside the State of Minnesota.

(Doc. 21-1 ¶ 18.) The Employment Agreement also permits BSI to deduct from wage and other compensation owed "any unpaid penalties for lost, opened/damaged, implanted/not billed or expired product, over- reimbursed business expenses as well as any training services and expenses loan, relocation loan, educational assistance loan, and/or sign- on bonus or portions thereof which Employee is obligated to pay back to Boston Scientific" when employment has been terminated pursuant to certain contractually outlined circumstances of termination, (*id.* ¶¶ 9, 12), and further states that employees can elect to participate in benefit plans, (*id.* ¶ 8).

Here, Defendant's decision to change the termination of Plaintiff's employment to a termination for cause—which in turn informed Defendant's decision not to pay Plaintiff the $182,120.27 and therefore is directly related to the claims at issue—was based on Plaintiff's alleged violation of the employee code of conduct at BSI. (Def.'s Mem. 3.)[5] Thus, the dispute involves a "dispute[] or claim[] between the [Plaintiff and BSI] . . . relat[ed] directly or indirectly to [this Employment] Agreement, or . . . relat[ed] directly or indirectly to Employee's employment with Boston Scientific," (Doc. 21-1 ¶ 18), and therefore is covered by the forum selection clause. *See KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 385

---
[5] "Def.'s Mem." refers to Defendant's Memorandum of Law in Support of Motion to Dismiss. (Doc. 3.)

(S.D.N.Y. 2011) (explaining that "[w]here broadly worded, a 'forum selection clause is not limited solely to claims for breach of the contract that contains it'" and that in determining the applicability of the clause, courts "examine the substance of [the] claims, shorn of their labels"); *see also Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (explaining that the term "related to" is "defined more broadly [than the term "arising out of"] and is not necessarily tied to the concept of a causal connection").

With respect to the fourth part of the test, Plaintiff has not made a "sufficiently strong showing" that enforcement would be unreasonable or unjust. *See Phillips*, 494 F.3d at 383–84. Indeed, Plaintiff relies only on its assertion that a majority of relevant witnesses and documents are located in New York, as well as the inconvenience to Plaintiff in having to travel to Minnesota and/or engage local counsel in Minnesota, to support his claims that enforcement of the forum selection clause would be "unfair, unreasonable and unjust." (Pl.'s Opp. 5–6.) These arguments are insufficient to justify setting aside an otherwise valid forum selection clause. *See Phillips*, 494 F.3d at 393 (explaining, in response to plaintiff's arguments that none of his witnesses, documents, or any parties were located in the chosen forum, that plaintiff's "averments suggest that litigation in [the chosen forum] may be more costly or difficult, but not that it is impossible" and that plaintiff "has not declared any of his claimed hardships are other than the obvious concomitants of litigation abroad, or were not foreseeable when he agreed to litigate in [the chosen forum]"); *Brennen v. Phyto-Riker Pharm., Ltd.*, No. 01 Civ. 11815 (DLC), 2002 WL 1349742, at *3–4 (S.D.N.Y. June 20, 2002) (noting that plaintiff's argument that the forum selection clause should not be enforced because it would "impose serious inconvenience and great cost on all parties required to litigate in Ghana," directly contravened the commitment plaintiff made in the employment agreement that he would not object to litigation in the chosen

forum). In addition, as Defendant points out, although Plaintiff worked in New York, he worked for a BSI "division that is based in Minnesota, reported to a sales vice president that is based in Minnesota, and was managed by a human resources function that is based in Minnesota." (Def.'s Mem. 7.) As such, there undoubtedly will be witnesses and documents located in Minnesota.

Therefore, Defendant's motion to dismiss for improper venue is GRANTED and this case is dismissed without prejudice to Plaintiff refiling his claims in Minnesota. The Clerk of Court is directed to terminate the open motion at Document 19 and close this case.

SO ORDERED.

Dated: June 27, 2017
      New York, New York

_____
Vernon S. Broderick
United States District Judge